**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

v.                    **Case No.: 8:25-cr-386-KKM-LSG**

<u>**MAURICIO FLORES.**</u>                    **/**

<u>**SENTENCING MEMORANDUM**
**IN SUPPORT OF A DOWNWARD VARIANCE**</u>

COMES NOW, Mauricio Flores, through undersigned counsel, and respectfully submits this memorandum in support of a downward variance from the advisory sentencing guideline range. Mr. Flores requests that this Honorable Court impose a custodial sentence of 42 months, which is sufficient but not greater than necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. § 3553(a). This request is supported by a 7-level downward variance from the advisory guideline range, as detailed below.

### I. BACKGROUND AND STATEMENT OF FACTS

Mr. Flores entered a guilty plea to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The case is now before this Court for sentencing.

Mr. Flores was born on October 30, 1988, in New Jersey. PSR ¶ 39. His father abandoned the family when Mr. Flores was approximately three years old, prompting his mother, Patricia Garcia, to return with him to Cali,

Colombia, where he was raised by his mother and maternal family in a supportive extended family environment. PSR ¶ 41.

At age 14, Mr. Flores moved to the United States to seek out his biological father, living with his mother's cousin, Martha Marin, in Florida, where he attended and completed high school as a good student. PSR ¶ 44. He returned to Colombia at age 20, and later became a father for the first time at age 22 and again at age 25. *Id.*

He ultimately returned to the United States as an adult, motivated entirely by his desire to provide his children, Sara and Jake, with better educational opportunities and a higher quality of life. PSR ¶ 43. Mr. Flores has been the primary financial and emotional provider for his mother and two children. PSR ¶¶ 41, 45.

He has a history of steady and gainful employment in internet marketing and web development, having worked for companies including Amada Senior Care and having operated his own business from home. PSR ¶¶ 54-55.

Mr. Flores has no prior criminal history of any kind. PSR ¶¶ 32-38.

## II. ADVISORY GUIDELINE CALCULATIONS

The Presentence Investigation Report calculates the advisory guideline range as follows:

Total Offense Level: 28;

Criminal History Category: I

Guideline Range: 78–97 months

Mr. Flores does not dispute these calculations but respectfully submits that the guidelines, as applied to his case, fail to differentiate his conduct from more culpable offenders and that a 7-level downward variance is warranted.

## III. ARGUMENT

The mechanical stacking of guideline enhancements, particularly the two-level enhancement for computer use under USSG § 2G2.2(b)(6) and the five-level enhancement for the number of images under USSG § 2G2.2(b)(7)(D), produces a range that substantially overstates Mr. Flores's culpability and warrants a 7-level downward variance.

The Sentencing Guidelines are advisory, not mandatory. *United States v. Booker*, 543 U.S. 220 (2005). A district court has broad discretion to vary from the Guidelines based on a policy disagreement with a particular guideline, especially where the guideline is not the product of empirical study or the Sentencing Commission's institutional expertise. *Kimbrough v. United*

*States*, 552 U.S. 85 (2007). The Supreme Court has affirmed that district courts may consider the Commission's own empirical data and policy statements as a basis for variance. *Gall v. United States*, 552 U.S. 38 (2007).

> Constrained by statutory mandatory minimum penalties, congressional directives, and direct guideline amendments by Congress in the PROTECT Act of 2003, §2G2.2 contains a series of enhancements that have not kept pace with technological advancements. Four of the six enhancements—accounting for a combined 13 offense levels—cover conduct that has become so ubiquitous that they now apply in the vast majority of cases sentenced under §2G2.2.

U.S. Sent'g Comm'n, *Federal Sentencing of Child Pornography: Non-Production Offenses*, at 4 (June 2021).

### *The Computer Use Enhancement (+2 Levels, USSG § 2G2.2(b)(6)) No Longer Meaningfully Distinguishes Culpability.*

The two-level enhancement for use of a computer was enacted at a time when computer access was relatively rare and indicated a degree of technical sophistication that could be treated as an aggravating factor. That rationale has been entirely overtaken by technology. According to data published by the United States Sentencing Commission more than 95 percent of all non-production child pornography offenders receive this enhancement. *Id.* at 68. When an enhancement applies in virtually every single case, it has ceased to function as a meaningful indicator of heightened culpability and instead operates merely as a uniform baseline increase applied to all defendants. The

Commission itself has recommended eliminating this enhancement for non-production offenses, recognizing that it no longer serves any rational sentencing purpose. In Mr. Flores's case, the use of a computer and internet connection to access digital material is entirely unremarkable and indistinguishable from the conduct of nearly every other person convicted of this offense. It adds nothing to our understanding of his culpability or the seriousness of his specific offense. A 2-level reduction to correct for this overstatement is fully warranted.

### *The Image Count Enhancement (+5 Levels, USSG § 2G2.2(b)(7)(D)) No Longer Reflects Greater Individual Culpability*

The five-level enhancement for possession of 600 or more images was also designed to target particularly prolific offenders as more culpable than those who possessed only a small number of images. *Id*. Yet in the digital age, the sheer volume of accessible material means that even a first-time, unsophisticated user can rapidly accumulate hundreds or thousands of files with minimal effort. The USSC 2021 Report confirms that this enhancement, like the computer enhancement, is applied in the overwhelming majority of non-production cases, making it a near-universal baseline rather than a reliable proxy for greater harm or depravity. The Commission's own empirical analysis has concluded that image count is a poor measure of culpability

because it reflects access, technology, and storage capacity more than individual intent or dangerousness. In this case, Mr. Flores's possession of over 600 images reflects the ease with which digital files accumulate rather than any indication that his conduct was particularly more serious than that of the typical offender in this category.

The +5 enhancement therefore overstates the seriousness of his specific conduct and warrants a corresponding reduction.

**The National Sentencing Averages Confirm the Seven Levels of Overstatement**

When considered in isolation, each of these two enhancements is problematic. When considered together, they compound the overstatement in a manner that is particularly acute. The combined 7 levels added by the computer use and image count enhancements represent a substantial increase in the guideline range based entirely on factors that are now near-universal in non-production child pornography cases and that the Sentencing Commission itself has identified as poor measures of culpability. The result is a guideline range that does not reflect Mr. Flores's actual individual culpability or the typical severity of this type of offense.

This conclusion is powerfully confirmed by the actual sentencing practices of courts across the country. A review of sentencing data for

defendants who are identically situated to Mr. Flores; that is, defendants with the identical guideline calculation (offense level 28, Criminal History Category I, statutory maximum of 10 years, all of the same enhancements applied); reveals that 61 such defendants were sentenced nationwide. *See* Exhibit D. The average sentence imposed on those 60 defendants was 42.41 months of imprisonment. This national average is dramatically below the bottom of the guideline range of 78 months, nearly half the low-end guideline sentence. This is not an anomaly; it is a nationwide consensus that courts, having considered the same arguments now before this Court, have broadly agreed that the guidelines substantially overstate the seriousness of this conduct and have varied accordingly. The breadth and consistency of this practice is itself powerful evidence that a downward variance in this case is not only appropriate but is in fact the norm.

For the foregoing reasons, this Court should exercise its discretion under 18 U.S.C. § 3553(a) and the authority recognized in *Kimbrough* and *Gall* to vary downward by 7 levels from offense level 28 to offense level 21. At offense level 21, Criminal History Category I, the resulting advisory guideline range is 37 to 46 months, as confirmed by the Sentencing Table. A sentence of 42 months falls squarely within this range.

## IV. THE SECTION 3553(a) FACTORS SUPPORT A SENTENCE OF 42 MONTHS

The factors set forth in 18 U.S.C. § 3553(a) independently support the imposition of a 42-month sentence, and when those factors are considered holistically alongside the guideline overstatement described above, the case for a 42-month sentence is compelling.

### A. Personal and Family History

Mr. Flores's life has been shaped by experiences of loss, instability, and resilience. He was born in New Jersey on October 30, 1988. PSR ¶ 39. His father abandoned the family when Mr. Flores was approximately three years old. PSR ¶ 41. Left alone, his mother made the difficult decision to return to Colombia, where she raised Mr. Flores with the support of his maternal grandfather and aunt in Cali. *Id.*

Mr. Flores spent his childhood across multiple schools and homes as family circumstances evolved, requiring adaptability and resilience from an early age. PSR ¶ 44, Exhibit B. At age 14, driven by a desire to know his father, Mr. Flores re-immigrated to the United States, living with his mother's cousin in Florida. *Id.* He attended and completed high school in Florida, where he was described as a serious, calm, and respectful young man. Exhibit A.

He spent five years in the United States before returning to Colombia,

where he began building his own family, becoming a father for the first time at age 22. PSR ¶ 43.

Determined to give his children the opportunities he had to fight for, Mr. Flores returned to the United States and established a home, enrolling his children in school, providing for their education and activities, and also sponsoring the legal immigration of his mother, Patricia Garcia, so that she could join the household. PSR ¶ 45.

He was the primary financial provider for his mother and children until the day of his arrest. PSR ¶ 45. He has a consistent and verified history of employment in internet marketing and analysis, having built a career in a skilled field and operated his own business. PSR ¶ 54.

He has no prior criminal history whatsoever; not an arrest, not a conviction, not even a minor offense; at any point in his life. PSR ¶¶ 32-38.

### B. Psychological Profile and Expert Assessment

On April 2, 2026, Dr. Dolly Ferraiuolo, PhD, LCSW, conducted a comprehensive biopsychosocial forensic evaluation of Mr. Flores. *See Generally* Exhibit B. Dr. Ferraiuolo administered multiple validated clinical instruments, including the Adverse Childhood Experiences (ACE) Assessment, the Davidson Trauma Scale, and the Compulsive Sexual Behavior Disorder Scale (CSBD-19). Her evaluation yields significant mitigating findings. Dr.

Ferraiuolo found that Mr. Flores does not meet the diagnostic criteria for any major psychiatric disorder, including schizophrenia, bipolar disorder, major depressive disorder, or any paraphilic disorder.

Mr. Flores scored in the low-moderate range on the ACE assessment, reflecting the childhood instability and abandonment that marked his formative years. He has experienced chronic, untreated anxiety and depressive distress, which he managed through maladaptive coping including marijuana use. He was never treated for these conditions, never received mental health counseling, and never had access to the structured support that could have addressed these underlying vulnerabilities before they contributed to this offense.

Dr. Ferraiuolo described that Mr. Flores would benefit from a structured re-entry environment like supervised release and that would significantly curtail the likelihood of reoffending. The doctor also noted that many of the steps he has already taken such as future planning and vocational training are all protective factors against relapse. She also noited the support of his family which is also evidenced by the numerous letter of support filed with this memorandum. *See* Exhibit A.

She concluded that his prognosis for rehabilitation is favorable with appropriate treatment, including individual psychotherapy, cognitive-

behavioral therapy, specialized compulsive sexual behavior treatment, and substance abuse counseling. She noted Mr. Flores's genuine insight, remorse, and motivation for change as positive prognostic indicators, and a sentence that incorporates rehabilitative components would be most effective in reducing risk and supporting his reintegration. Her professional assessment strongly supports the conclusion that extended incarceration beyond 42 months serves no additional protective purpose given Mr. Flores's low risk profile and strong rehabilitation potential.

### C. Letters of Support and Community Ties

Mauricio Flores Garcia is consistently described by those closest to him as the indispensable emotional and financial foundation of a large, multi-generational family who have provided ten letters of support for Mr. Flores. *See* Exhibit A. His life has been defined by an unwavering commitment to his children, for whom he has been a tireless provider, ensuring their access to education, sports, and stable health care despite having grown up without a father figure of his own. Family members and former partners alike characterize him as a selfless individual who consistently prioritized the well-being of others, often sacrificing his own needs to maintain a unified household and support his elderly mother and grandmother. This portrait is not one of a man defined by the errors of his ways, but of a devoted father and son whose

primary motivation has always been the stability and advancement of his loved ones.

Beyond his domestic responsibilities, Mr. Flores has earned a reputation for professional integrity, calm resilience, and a genuine gift for human connection. From his years as a diligent student to his decade-long career in internet marketing and selection processes, he has been praised by colleagues and friends for his honesty, impeccable conduct, and willingness to mentor others. He is regarded as an honorable and sincere man who values peaceful coexistence and dialogue over conflict, serving as a protective and supportive figure within his social circle. His history of professional reliability and his deep-seated values of hard work and responsibility underscore a character that is fundamentally rooted in pro-social behavior and community contribution.

Finally, Mr. Flores has met his current circumstances with profound remorse and a sincere commitment to spiritual and personal growth. Those in constant contact with him observe a man who has used his period of incarceration to deepen his faith and reflect on his mistakes with genuine humility. He possesses a robust and eager support network comprising family members, professional peers, and spiritual leaders who are ready to assist in his post-release reintegration. This collective testimony reflects a man with a high capacity for rehabilitation, whose life of service to his family and

community suggests that, with the support of his loved ones, he is fully prepared to return to his role as a productive and law-abiding provider.

### D. The Need for Just Punishment, Deterrence, and Protection of the Public

A sentence of 42 months represents a meaningful period of incarceration that satisfies the need for just punishment. Mr. Flores has accepted responsibility for his conduct, pleaded guilty, and faces the collateral consequences of this conviction, including sex offender registration, supervised release conditions, and the permanent stigma of a federal felony conviction, for the remainder of his life. These consequences are themselves significant deterrents. The need to protect the public is adequately served by a 42-month sentence followed by a substantial term of supervised release, particularly in light of Dr. Ferraiuolo's expert assessment that Mr. Flores poses a low risk of sexual reoffending and that his conduct was impulsive and avoidant rather than predatory.

### E. The Need to Provide Mr. Flores with Educational and Vocational Training and Correctional Treatment

Section 3553(a)(2)(D) directs the Court to consider the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner. Mr. Flores has demonstrated through his conduct while incarcerated that he is already

actively engaged in this goal. The educational transcript maintained by the Hernando County Jail through CypherWorx, Inc. documents that Mr. Flores has successfully completed dozens e-learning courses since his detention in November 2025. *See Generally* Exhibit C. Some highlights are that he completed the Adapting to Change course on March 3, 2026. And he passed the 12-Step Recovery Programs course on March 3, 2026, with an exceptional score of 90: a result that reflects his sincere engagement with the principles of recovery and self-improvement. In addition to these completed courses, Mr. Flores has accessed and engaged with additional educational modules on science and personal development. This record of educational achievement is not trivial. It demonstrates that Mr. Flores is using his time of incarceration constructively, that he is oriented toward rehabilitation and reintegration, and that the goals of § 3553(a)(2)(D) are already being served. A sentence of 42 months provides sufficient time to continue and complete the treatment programming recommended by Dr. Ferraiuolo, while avoiding the diminishing returns, and the potential for prisonization effects, that accompany an unnecessarily long sentence.

### F. The Need to Avoid Unwarranted Sentencing Disparities Among Similarly Situated Defendants (18 U.S.C. § 3553(a)(6))

Among the most compelling factors supporting a 42-month sentence is

the imperative under 18 U.S.C. § 3553(a)(6) to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. As argued above a 42-month sentence is not only reasonable but is, in fact, the national average. This data demonstrates beyond any reasonable dispute that courts across the country, having considered the same guidelines and the same arguments, have overwhelmingly agreed that the advisory range of 78 to 97 months substantially overstates the appropriate punishment for this offense.

Imposing a sentence within the *unadjusted* guideline range in this case would not avoid sentencing disparity, it would create it. It would mean that Mr. Flores receives a sentence nearly twice as long as the national average for identically situated defendants. Mr. Flores is therefore asking for a sentence that is simultaneously: (1) the national average for identically situated defendants; (2) within the post-variance advisory guideline range; and (3) consistent with the empirical consensus among federal courts that these guidelines overstate the seriousness of this conduct.

# V. CONCLUSION

For all of the foregoing reasons, Mr. Flores respectfully requests that this Court impose a sentence of 42 months of imprisonment. Such a sentence is sufficient, but not greater than necessary, to achieve the purposes of sentencing as mandated by 18 U.S.C. § 3553(a). It reflects the true nature and circumstances of the offense, fully accounts for Mr. Flores's history and characteristics, honors his demonstrated commitment to rehabilitation, avoids the unwarranted sentencing disparities that would result from a within-guidelines sentence, and is squarely supported by national sentencing data and the Sentencing Table following the requested 7-level variance.

DATED this 30th day of April 2026.

Respectfully submitted,

CHARLES L. PRITCHARD, JR.
FEDERAL PUBLIC DEFENDER

/s/ Ryan J. Maguire
Ryan J. Maguire, Esq.
Assistant Federal Defender
Florida Bar No. 117534
400 North Tampa St. Suite 2700
Tampa, FL 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: ryan_maguire@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of April 2026, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

Muriel Moore, AUSA

*/s/ Ryan J. Maguire*
Ryan J. Maguire, Esq.
Assistant Federal Defender